**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| JACQUE WHAUMBUSH, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO.  09-6066 |
| | : | |
| THE CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |


<u>**MEMORANDUM**</u>

BUCKWALTER, S. J.                                                  October 14, 2010

Presently before the Court is Defendants the City of Philadelphia, John Green, Leon A.

King, II, and Louis Giorla's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  For the following reasons, the Defendants' Motion to Dismiss is

granted in part and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Jacque Whaumbush and Detention Management Services, Inc. ("DMS")

initiated this suit in the Philadelphia Court of Common Pleas on November 30, 2009.

Defendants removed the action to federal court on December 21, 2009, and filed a Motion to

Dismiss on December 30, 2009.  Plaintiffs then filed a First Amended Complaint (hereinafter

"Amended Complaint") on April 9, 2010.  Defendants filed a second Motion to Dismiss on April

22, 2010, and Plaintiffs submitted a Response on May 24, 2010.

According to the facts alleged in the Amended Complaint, Plaintiff Jacque Whaumbush

served as Chief Deputy Sheriff for the City of Philadelphia ("the City") under Sheriff John Green

from 2005 to 2007. (Am. Compl. ¶ 13.) Whaumbush alleges that he was wrongfully and constructively terminated from his position with the City in 2007. (Id. ¶ 14.) Soon after his termination, Whaumbush made an unsuccessful bid to run against Defendant Green in the 2007 Sheriff elections. (Id. ¶ 15.)

Around that time, the City of Philadelphia published a "Request for Contract Opportunity" for the outsourcing of housing, transportation, and other services for Philadelphia County Prison inmates. (Id. ¶ 16.) In response to this request, Plaintiff DMS, a Pennsylvania corporation, drafted and submitted a contract proposal to the City of Philadelphia Prison System with the help of Plaintiff Whambush.[1] (Id. ¶¶ 16-18.) Around August of 2007, the City published a Notice of Contract Award naming DMS as the recipient of the contract. (Id. ¶ 19.) Plaintiffs allege that the contract was worth more than $10 million in revenue to DMS. (Id.)

Soon after the publication of this notice, Plaintiff Whaumbush attended a meeting with Defendant Leon King, Commissioner of the Philadelphia Prison System at that time. (Id. ¶ 20.) Plaintiffs aver that Defendant King worked closely with Defendant Green on transport and security issues for the Philadelphia Prison System. (Id. ¶ 21, 23.) As a result of his "close associat[ion]" with Defendant Green, Defendant King purportedly knew of Plaintiff Whaumbush's civil rights complaints against Green and his campaign to unseat him as Sheriff. (Id. ¶¶ 21-22.) Plaintiffs further allege that, around the time of this meeting, Defendants Green and King learned of Plaintiff Whaumbush's association with DMS. (Id. ¶ 24.) Soon after, the

_____

[1] Notably, the Amended Complaint does not clearly define the relationship between Plaintiffs Whaumbush and DMS – it states only that Whaumbush was "associated" with the company. (Am. Compl. ¶¶ 16-18.) Such lack of information about the relationship between the Plaintiffs raises several standing issues, discussed infra Sections III(B)(1)(c) n.4, III(C)(1) and (2), and III(D) n.6.

City of Philadelphia terminated DMS's contractual award with "no reasonable explanation." (Id. ¶ 25.) The City then awarded the contract to a vendor with a more expensive proposal, which the vendor was ultimately unable to implement. (Id. ¶ 29.)

According to Plaintiffs, Defendants Green and King, upon learning of Whaumbush's association with the DMS contract, conspired to cause the termination of the award "to retaliate against Whaumbush and his allies" for Whambush's previous complaints and campaign against Sheriff Green. (Id. ¶ 26.) They aver that Defendants' acts were "intentional, malicious, negligent, reckless, and undertaken in complete disregard of the rights of Plaintiffs." (Id. ¶ 31.) Plaintiffs allege that the rescinding of the alleged contract caused them "substantial loss of revenue and extreme financial damage." (Id. ¶ 26.)

The Amended Complaint sets forth the following claims against the City of Philadelphia and all Defendants in their official capacities, along with Defendants Green and King in their individual capacities: (1) breach of contract (id. ¶¶ 32-38); (2) tortious interference with contractual relationships and/or prospective advantage (id. ¶¶ 39-41); (3) deprivations of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 (id. ¶¶ 42-46); (4) violation of Plaintiffs' rights under 42 U.S.C. § 1981 (id. ¶¶ 47-51); and (5) conspiracy to violate Plaintiffs' rights under 42 U.S.C. § 1985. (Id. ¶¶ 52-54.) Defendants seek the dismissal of all of these claims, which the Court now considers in turn.[2]

---

[2] Plaintiffs have since stipulated to the dismissal of Count I (Breach of Contract) as to all Defendants, and of Counts II (Tortious Interference with Contractual and/or Prospective Contractual Relations) and V (42 U.S.C. § 1985) as to Defendant the City of Philadelphia. (Pls.' Mem. Opp'n Mot. Dismiss 3 n.1.) The Court therefore dismisses Count I as to all Defendants, and Counts II and V as to Defendant the City of Philadelphia. Likewise, the Court dismisses Counts II and V as to Defendants Giorla, Green, and King in their official capacities, as they are duplicative of Plaintiffs' claims against the City. Strickland v. Mahoning Twp., 647 F. Supp. 2d

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  The Court emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 1950.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.  The task of determining whether a complaint states a plausible claim for relief is "context-specific," and "requires the reviewing court to draw on its judicial

422, 428 (M.D. Pa. 2009) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985) (stating that an official-capacity suit is "generally merely another way of pleading an action against an entity of which an officer is an agent").

experience and common sense." Id.  The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57).

Expanding on the Twombly/Iqbal standards, the United States Court of Appeals for the Third Circuit succinctly defined a two-prong analysis to be undertaken by district courts during a Rule 12(b)(6) review:

> First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted).

Notwithstanding the foregoing, many of the fundamental underpinnings of Rule 12(b)(6) still stand.  Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d

Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

### A. Whether Plaintiffs Have Stated a Claim for Tortious Interference with Existing or Prospective Contractual Relations

Count II of the Amended Complaint asserts that Defendants engaged in tortious interference with Plaintiffs' existing or prospective contractual relationship with the City of Philadelphia. Under Pennsylvania law, a claim for tortious interference requires:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004); Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000).

Defendants first argue that Plaintiffs have failed to allege the existence of a prospective contract with the City of Philadelphia. (Defs.' Mot. Dismiss 6.) The Court disagrees. Pennsylvania courts have defined a prospective contractual relationship as something "less than a contractual right," but "more than a mere hope." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979); see also Glenn v. Point Park Coll., 272 A.2d 895, 898-99 (Pa. 1971). Here,

Plaintiffs have alleged that the City published a "Request for Contract Opportunity" for the provision of prison services. (Am. Compl. ¶ 16.) Plaintiffs submitted a proposal to the City in response to the request, and the City then published a "Notice of Award" naming Plaintiff DMS as the recipient of the contract in question. (Id. ¶¶ 17-19.) Taken as true, such allegations raise a reasonable inference as to the existence of "more than a mere hope" of a contractual relationship.

Defendants also contend that it is legally impossible for the City of Philadelphia or its employees to tortiously interfere with a contract to which the City is a party. (Defs.' Mot. Dismiss 6.) The Court need not reach this argument with respect to Defendant the City of Philadelphia, however, as Plaintiffs have stipulated to the dismissal of the claim against this Defendant. (Pls.' Mem. Opp'n Mot. Dismiss 3 n.1.) By extension, the Court has also dismissed this claim as to Defendants Giorla, Green, and King in their official capacities. See supra n.2. Thus, we address Defendants' second argument only with respect to Defendants Green and King in their individual capacities.[3]

The existence of two parties to a contract and one party who interferes with that contract is essential for a tortious interference claim. Labalokie v. Capital Area Intermediate Unit, 926 F. Supp. 503, 509 (M.D. Pa. 1996). A corporate entity and its agents are not distinct parties for purposes of contracting. Id. Thus, a corporation's agents or employees generally cannot, as a matter of law, tortiously interfere with the corporation's own contracts. Id. An agent can qualify

---

[3] Plaintiffs request automatic denial of the Motion as it applies to Defendants Green and King in their individual capacities, arguing that Defendants have failed to address Plaintiffs' personal claims against these Defendants. The Court finds that Defendants' arguments apply to Defendants Green and King in both their official and individual capacities, and therefore deems automatic denial of the Motion inappropriate on these grounds.

as a third party, however, if his acts fall outside of the scope of employment.  Id.; Tucker v.

Merek & Co., Inc., No. CIV.A.02-2421, 2002 WL 31689256, at *2 (E.D. Pa. Dec. 12, 2002).

Other decisions from this Court have suggested that an agent's conduct falls outside the scope of

employment if he acts for his own purposes, and not in furtherance of his employer's business.

Lezotte v. Allegheny Health Educ. and Research Found., No. CIV.A.97-4959, 1998 WL 218086,

at *5 (E.D. Pa. May 1, 1998); Ceesay v. Miller, Mason, & Dickenson, No. CIV.A.90-2800, 1990

WL 121218, at *6 (E.D. Pa. Aug. 15, 1990); see also Johnson v. Glenn Sand and Gravel, 453

A.2d 1048, 1050 (Pa. Super. Ct. 1982).

In the instant case, Plaintiffs do not dispute that the City of Philadelphia was party to the

alleged contract, but argue that Defendants Green and King's interference with the award fell

outside the scope of their employment with the City.  Specifically, Plaintiffs contend that

Defendants Green and King intentionally and maliciously caused the termination of the award in

retaliation for Green's personal grievances with Whaumbush, effectively depriving Whaumbush

and a company with which he was affiliated of $10 million in revenue.  If the Court accepts these

facts as true, Plaintiffs have raised a reasonable inference that Green and King acted out of

personal motivation, and therefore outside the scope of employment.  Accordingly, the Court

denies the Motion to Dismiss Plaintiffs' claim for tortious interference with respect to

Defendants Green and King in their individual capacities.

**B.      Whether Plaintiffs Have Stated a Claim Under 42 U.S.C. § 1983**

Count III of the Amended Complaint asserts a § 1983 claim against all Defendants for

violations of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights under the U.S.

Constitution.  To state a claim under 42 U.S.C. § 1983, the Plaintiffs must allege that the

Defendants, "under color of law, deprived them of a federal constitutional or statutory right." 42 U.S.C. § 1983; Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010). Section 1983 is not a source of substantive rights, but provides a remedy for the violation of other federal rights. See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Plaintiffs bring their § 1983 claim against Defendants Green and King in both their individual and official capacities, and against Defendants Giorla and the City of Philadelphia for purposes of municipal liability. The Court will first consider the claims against Defendants Green and King in their personal capacities, and then address the official capacity suits against all Defendants.

### 1. Individual Liability of Defendants Green and King Under 42 U.S.C. § 1983

An individual-capacity suit under 42 U.S.C. § 1983 "alleges wrongful conduct taken under color of state law and seeks relief from the defendant personally." Craig v. Salamone, No. CIV.A.98-3685, 1999 WL 213368, at *4 (E.D. Pa. Apr. 8, 1999). To incur individual liability, a defendant must be "personally involved in the alleged wrongs." Santiago v. City of Vineland, 107 F. Supp. 2d 512, 540 (D.N.J. 2000) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Such involvement may be shown by allegations of "personal direction or of actual knowledge and acquiescence." Id. In the instant case, Plaintiffs seek to impose individual liability on Defendants Green and King for personally depriving them, under color of law, of their First, Fourth, Fifth, and Fourteenth Amendment rights.

### a. First Amendment Retaliation Claim

Plaintiffs first seek to impose personal liability on Defendants Green and King for

9

retaliating against Plaintiffs for activity protected by the First Amendment. To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Snyder v. Kraus, No. CIV.A.08-5217, 2010 WL 3419890, at *3 (E.D. Pa. Aug. 27, 2010) (citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)). Plaintiffs may establish causation by alleging either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Snyder, 2010 WL 3419890, at *3 (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

Defendants argue, without elaboration, that the First Amendment is inapplicable to the case at hand. (Defs.' Mot. Dismiss 8.) The Court disagrees. Plaintiffs have alleged that Defendants Green and King caused the termination of Plaintiff DMS's contract with the City of Philadelphia in retaliation for (1) Plaintiff Whaumbush's participation in civil rights actions against Defendant Green and his associates, and (2) his political campaign to unseat Defendant Green as Sheriff in the 2007 elections. (Am. Compl. ¶¶ 14, 15, 26.) The First Amendment protects both non-frivolous suits against employers, Brennan v. Norton, 350 F.3d 399, 417 (3d Cir. 2003), and political campaigning. McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) (citing Buckley v. Valeo, 424 U.S. 1, 14-15 (1976)). Further, Plaintiffs have alleged both a significant harm caused by the retaliation (the loss of a contract award worth $10 million) and a temporal proximity between the protected activity and retaliatory act (the City rescinded the contract soon after Green and King learned of Whaumbush's involvement). (Am. Compl. ¶¶ 19,

26, 27.) Taking these allegations as true, the Court concludes that Plaintiffs have presented a plausible claim for First Amendment retaliation against Defendants Green and King in their individual capacities. The Court therefore denies the Motion to Dismiss with respect to this issue.

**b.    Fourteenth Amendment Substantive Due Process Claim**

Plaintiffs next assert that Defendants Green and King, by depriving Plaintiffs of their First Amendment rights under color of law, have violated the Fourteenth Amendment's substantive due process guarantees. The Supreme Court has deemed freedom of speech under the First Amendment "among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States." Gitlow v. New York, 268 U.S. 652, 666 (1925); see also Phillips v. Borough of Keyport, 107 F.3d 164, 180 (3d Cir. 1997) (stating that substantive due process liability may arise where a "state or local official has prevented or punished constitutionally protected expression because of distaste for the content of that expression"). Given that the Court has allowed Plaintiffs' First Amendment claim to proceed, the Court also denies the Motion with respect to Plaintiffs' Fourteenth Amendment claim.

**c.    Fourteenth Amendment Procedural Due Process Claim**

Plaintiffs also assert that Defendants' termination of the contract constitutes a deprivation of a property right protected by the Fourteenth Amendment's procedural due process guarantees. In response, Defendants argue that the contract does not represent a property interest subject to the Fourteenth Amendment. (Defs.' Mot. Dismiss 7-8.) The Court agrees.

A plaintiff seeking due process protection must show a legitimate claim of entitlement to

a property interest. <u>Perry v. Sinderman</u>, 408 U.S. 593, 601 (1972). The Third Circuit has identified only two types of contracts protected by due process: first, "where the contract confers a protected status," (e.g. welfare benefits or social security); second, "where the contract itself includes a provision that the state entity can terminate the contract only for cause." <u>Unger v. Nat'l Residents Matching Program</u>, 928 F.2d 1392, 1399 (3d Cir. 1991). Here, Plaintiffs allege merely that the City of Philadelphia published a notice naming DMS as the recipient of the contract award. (Am. Compl. ¶ 19.) Nowhere do the facts indicate that the City could only terminate this award for cause. Thus, the Court grants the Motion to Dismiss Plaintiffs' § 1983 claim to the extent it derives from violations of procedural due process.[4]

### d. Fourth Amendment and Fifth Amendment Claims

Next, Plaintiffs allege that Defendants have violated their Fourth and Fifth Amendment rights, but offer no facts implicating the exercise of these rights. The Fourth Amendment of the

---

[4] Notably, Plaintiff DMS may not have standing to assert a § 1983 action due to the dismissal of Plaintiffs' procedural due process claim. Because this is a jurisdictional issue, the Court will review it *sua sponte*.

All deprivations of civil rights alleged in the complaint are specific to Plaintiff Whaumbush. However, "one cannot sue for the deprivation of another's civil rights." <u>O'Malley v. Brierley</u>, 477 F.2d 785, 789 (3d Cir. 1973) (quoting C. ANTIEAU, FEDERAL CIVIL RIGHTS ACTS, CIVIL PRACTICE § 31 at 50-51). To obtain third party standing, the Third Circuit and the Supreme Court require that: 1) the plaintiff suffers injury; 2) the plaintiff and the third party have a "close relationship"; and 3) the third party "face[s] some obstacles that prevent it from pursuing its own claims." <u>Heller v. Fulare</u>, 371 F. Supp. 2d 743, 748 (W.D. Pa. 2005) (citing <u>Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.</u>, 280 F.3d 278, 288-89 (3d Cir. 2002)); <u>see also</u> <u>Powers v. Ohio</u>, 499 U.S. 400, 410-11 (1991). Given the undefined relationship between Plaintiffs Whambush and DMS, the Court does not have sufficient information at this time to determine the validity of Plaintiff DMS's standing with respect to the § 1983 claim at issue. The Court finds, however, that Plaintiffs have provided a sufficient a legal basis for their claim to move forward, with the presumption that discovery will aid the Court in making a future standing determination.

U.S. Constitution protects citizens from unreasonable search and seizure. U.S. CONST. amend. IV. The Fifth Amendment prohibits the federal government – not state or local actors – from depriving citizens of life, liberty, or property without "due process of law." U.S. CONST. amend. V; see also Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983); Garcia v. County of Bucks, PA, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). Plaintiffs have alleged neither Fourth Amendment activity nor federal action in their Amended Complaint, nor have they responded to Defendants' arguments for dismissal of these claims. Accordingly, the Court dismisses Plaintiffs' Fourth and Fifth Amendment claims.

## 2. Official Liability of All Defendants Under 42 U.S.C. § 1983

Plaintiffs also bring the aforementioned § 1983 claims against the City of Philadelphia and Defendants Green, King, and Giorla in their official capacities. Defendants contend that the City cannot be held liable for Green and King's alleged acts because they do not constitute official City policy or custom. (Defs.' Mot. Dismiss 10.) Given that the official capacity claims against Green, King, and Giorla are effectively identical to the claims against the City, the Court will consider the claims against all Defendants under the same liability standard. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent") (quotation and citation omitted); A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004).

The Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under § 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690

(1978).  A municipality cannot incur § 1983 liability based on a *respondeat superior* theory, however.  Id. at 691.  Rather, § 1983 imposes liability only where a plaintiff identifies either "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  Id. at 690-91.  The Third Circuit has refined these definitions, explaining that policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict," or (2) through a "course of conduct . . . when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations and quotations omitted).  These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality."  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997); Banegas v. Hampton, No. CIV.A.08-5348, 2009 WL 1098845, at *3 (E.D. Pa. Apr. 22, 2009).

Here, Plaintiffs argue that the City may be held liable for the acts of Defendants Green and King as "official policymaker[s]" for the City of Philadelphia "and/or the individual[s] responsible for the implementation of the City's policies and practices" regarding the Sheriff's Department and Prison System.  (Am. Compl. ¶¶ 5, 7.)  Plaintiffs assert that Green and King's decision to retaliate against Whaumbush by causing the termination of the contract award constitutes "official custom, policy, or practice of the City of Philadelphia in that it was undertaken pursuant to the directions of top level decisionmakers for the City of Philadelphia in

their respective departments." (Id. ¶ 45.) Plaintiffs reason that a single decision by Green and

King to cause the termination of the contract is sufficient to impose liability upon the City. (Pls.'

Mem. Opp'n Mot. Dismiss 11-12.) Defendants argue that Plaintiffs' vague and conclusory

allegations fail to show the existence of an official City policy. (Defs.' Mot. Dismiss 10.)

A single decision by a municipal official may constitute "policy" under Monell, but *only*

if the official is responsible for establishing final policy with respect to the subject matter in

question. Pembaur v. Cincinnatti, 475 U.S. 469, 481-82 (1986). In Pembaur, the Court

emphasized that "[t]he fact that a particular official – even a policymaking official – has

discretion in the exercise of particular functions does not, without more, give rise to municipal

liability based on an exercise of that discretion." Id. Rather, the official must also have "final,

unreviewable discretion" to make decisions respecting such activity. Andrews, 895 F.2d at 1481;

see also Pembaur, 475 U.S. at 483; Koltonuk v. Borough of Laureldale, 443 F. Supp. 2d 685, 699

(E.D. Pa. 2009) (finding that a borough solicitor's decision to bring criminal charges against the

plaintiff, while within his discretion, did not constitute "policy" because the solicitor's decisions

were reviewable by another entity). In other words, the City may be held liable only for a

decision by "the highest officials responsible for setting policy in that area of the government's

business." Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003). Whether an official has such

authority is ultimately a question of state law. Pembaur, 475 U.S. at 483.

Upon careful analysis of Monell, the Court finds Plaintiffs' mere labeling of Green and

King as "official policymakers" responsible for "policies and practices" of the Sheriff's Office

and Prison System insufficient to establish a plausible claim for municipal liability. While

Plaintiffs allege broadly that Defendants Green and King are policymakers for their respective

departments, the Court finds no facts in the Amended Complaint alleging that these Defendants

had final, unreviewable discretion with respect to the subject matter in question – the creation or

termination of municipal contracts. This finding is bolstered by Defendants' reference to the

City Home Rule Charter ("the Charter") and the Philadelphia Code ("Code"), of which this Court

takes judicial notice pursuant to Federal Rule of Evidence 201.[5] The Charter names the

Philadelphia City Council as the entity that regulates the City's contract process for professional

services. PHILADELPHIA, PA., HOME RULE CHARTER § 8-200 (2010). The Code names the

Procurement Commissioner, Finance Director, and City Solicitor as those officials responsible

for contract approval – meaning that at least three other municipal officials have discretion over

the City's contract execution process. PHILADELPHIA, PA., CODE § 17-1402(1)(g). Such

information, in addition to the lack of specificity in Plaintiffs' allegations, warrants dismissal of

Plaintiffs' § 1983 claim with respect to the City of Philadelphia and all Defendants in their

official capacities.[6]

### C.  Whether Plaintiffs Have Stated a Claim Under 42 U.S.C. § 1981

Plaintiffs next assert that Defendants Green and King's retaliatory acts constitute a

deprivation of Plaintiffs' right to contract in violation of 42 U.S.C. § 1981. Specifically,

---

[5] Under Federal Rule of Evidence 201, a court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

[6] Plaintiffs seek leave to amend the Complaint as to this issue. Given the conclusive weight of the Charter and Code, the Court does not believe that further discovery will allow Plaintiffs to prove municipal liability at a later stage. Therefore, we also deny Plaintiffs' request for leave to amend.

Plaintiffs allege that Green and King caused the City to rescind Plaintiffs' contract award in part to retaliate against Plaintiff Whaumbush for a race discrimination suit he previously filed against Sheriff Green and the City of Philadelphia. Plaintiffs maintain this action against all Defendants.

Section 1981 protects the equal right of citizens to make and enforce contracts without regard to race. 42 U.S.C. § 1981(a). To state a claim under § 1981, Plaintiffs must allege: 1) that the plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendants; and 3) discrimination concerning an activity enumerated in the statute, which includes the right to make and enforce contracts. Brown v. Phillip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001).

Defendants first argue that Plaintiffs have improperly framed their § 1981 claim against the City and Defendants Green, King, and Giorla in their official capacities as an independent cause of action against state actors. (Defs.' Mot. Dismiss 9.) Indeed, the Third Circuit has ruled that § 1983 "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989). The Court need not reach this issue, however, since Plaintiffs' failure to allege an official custom or policy under Monell precludes them from imposing liability upon the City or those Defendants sued in their official capacities. See Jett, 491 U.S. at 735-36 (extending the Monell standard to cases arising under § 1981). Therefore, the Court's dismissal of the § 1983 claim as to the City and Defendants Giorla, Green, and King in their official capacities also relieves those Defendants of liability under § 1981. The Supreme Court has held, however, that "§ 1981 created an implied cause of action against private actors because no other federal statute provided a remedy against

them." McGovern, 554 F.3d at 117 n.3 (citing Jett, 491 U.S. at 731-32).  Therefore, the Court

will consider Plaintiffs' § 1981 action against Defendants Green and King in their individual

capacities.

A plaintiff asserting a § 1981 claim must first identify an impaired contractual

relationship under which the plaintiff has rights.  Mack v. AAA Mid-Atl., Inc., 511 F. Supp. 2d

539, 544 (E.D. Pa. 2007) (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006)

(quotations omitted)).  Defendants contend that Plaintiffs cannot assert a § 1981 claim because a

contract never existed between Defendants and DMS.  (Defs.' Mot. Dismiss 9.)  Plaintiffs

correctly point out, however, that § 1981 offers relief not just where race discrimination impairs

an existing contract, but where it "blocks the creation of a contractual relationship."  Domino's

Pizza, 546 U.S. at 476; see also 42 U.S.C. § 1981(b)) ("[T]he term 'make and enforce contracts'

includes the making, performance, modification, and termination of contracts, and the enjoyment

of all benefits, privileges, terms, and conditions of the contractual relationship.").  Thus, § 1981

"protects the would-be contractor along with those who already have made contracts."  Id.  As

previously discussed in Section III(A), Plaintiffs in the instant case have sufficiently alleged the

existence of a prospective contractual relationship with the City.

Defendants also argue that Plaintiffs cannot allege a valid § 1981 claim where Defendants

aimed to discriminate against one party (Whaumbush), but caused contractual harm to another

(DMS).  This argument raises what appear to be separate standing issues for each Plaintiff,

though the Plaintiffs are bringing a single claim.  For the sake of clarity, the Court will consider

each standing issue separately.

### 1. Plaintiff DMS's Standing to Assert a § 1981 Claim

Defendants first appear to contend that Plaintiff DMS cannot assert a valid § 1981 claim because they did not suffer direct discrimination. This Court disagrees. The Supreme Court has stated that "[s]ection 1981 offers relief when racial discrimination blocks the creation of a contractual relationship . . . so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Domino's Pizza, 546 U.S. at 476. Subsequent courts have found that this includes plaintiffs whose contractual rights are impaired due to discrimination against their agents. Shumate v. Twin Tier Hospitality, 655 F. Supp. 2d 521, 531 (M.D. Pa. 2009). In the case at bar, Plaintiffs have identified a prospective contract under which Plaintiff DMS had rights, and averred that Defendants terminated the contract in retaliation for Plaintiff Whaumbush's previous race-based suits against Defendant Sheriff Green. Plaintiffs further allege that Plaintiff Whaumbush negotiated various aspects of the prospective contract on behalf of DMS. Such allegations raise a reasonable inference that Plaintiff DMS suffered contractual harm due to race-based discrimination against its agent. Accordingly, the Court denies dismissal of Plaintiff DMS's § 1981 claim.

### 2. Plaintiff Whaumbush's Standing to Assert a § 1981 Claim

Defendants also appear to raise a standing issue regarding Plaintiff Whaumbush, whose eligibility to assert a § 1981 action hinges on his interest in the disputed contract. The Supreme Court has found that an agent who suffers discrimination but has no interest in the impaired contract does not have standing to bring a § 1981 claim. Domino's Pizza, 546 U.S. at 476. The Court left open the question, however, of whether an intended third party beneficiary has a contractual interest sufficient to bring a § 1981 action. The Third Circuit has not yet ruled upon

this issue, but the Courts of Appeals of the Second, Fourth, Seventh, and Tenth Circuits have held that third-party beneficiaries do possess sufficient contractual rights to assert a valid claim under § 1981.  See Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 436 (4th Cir. 2006); Hampton v. Dillard Dep't. Stores, Inc., 247 F.3d 1091, 1118-19 (10th Cir. 2001); Jones v. Local 520, Intern. Union of Operating Eng'rs, 603 F.2d 664, 665-66 (7th Cir. 1979); Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333, 1339 (2d Cir. 1974).  The Middle District of Pennsylvania has agreed.  See Shumate, 655 F. Supp. 2d at 534-35.

Presently, the Court does not have sufficient information concerning the relationship between Plaintiffs Whaumbush and DMS to determine the validity of Whaumbush's standing with respect to the claims at issue.  Plaintiffs have, however, asserted that Whaumbush aided DMS in drafting and negotiating the disputed contract, and have identified Whaumbush as an intended beneficiary of the contract in the context of their breach of contract claim.  (Am. Compl. ¶ 36.)  Therefore, the Court finds that Plaintiff Whaumbush has provided a sufficient a legal basis for his § 1981 claim to move forward, with the presumption that discovery will aid the Court in making a future standing determination.

### D.  Whether Plaintiffs Have Stated a 42 U.S.C. § 1985 Claim

The final count of the Amended Complaint alleges that Defendants Green and King, in their personal capacities, violated 42 U.S.C. § 1985 by conspiring to retaliate against Plaintiff Whaumbush for pursuing race discrimination charges against Defendant Green.  Section 1985(3) protects any person or group of persons from a private conspiracy to deprive them, "either directly or indirectly . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C.§ 1985(3); Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir.

2006) (quoting <u>Farber v. City of Patterson</u>, 440 F.3d 131, 134 (3d Cir. 2006)).[7] The Supreme

Court has limited the scope of § 1985(3) to those who suffer injury by conspirators motivated by

race or other class-based animus. <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d. Cir. 1997) (citing

<u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)); <u>Townes v. City of Philadelphia</u>, No.

CIV.A.00-CV-138, 2001 WL 503400, at *5 (E.D. Pa. May 11, 2001). In order to establish a

claim brought pursuant to section 1985(3), Plaintiff must demonstrate:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

<u>Farber</u>, 440 F.3d at 134 (3d Cir. 2006).

Defendants first argue that Plaintiffs have failed to allege a "well-pleaded underlying

violation of Plaintiffs' constitutional rights" sufficient to fulfill the fourth prong of the

abovementioned standard. (Defs.' Mot. Dismiss 11.) The Court disagrees, finding this argument

wholly derivative of Defendants' contention that Plaintiffs failed to allege a violation of their

constitutional rights pursuant to § 1983. Since the Court has allowed Plaintiffs' First and

Fourteenth Amendment claims under § 1983 to move forward, we dismiss this argument without

further analysis.

Next, Defendants argue that Plaintiffs' claim must be dismissed pursuant to the doctrine

of intracorporate immunity. Under this doctrine, a corporation's employees, acting as agents of

---

[7] Section 1985 does not establish substantive rights; it merely offers a remedy for Plaintiffs' claims under § 1983 and § 1981. Therefore, the Court notes the possibility of standing issues identical to those discussed in the context of § 1983 and § 1981. As discussed, the Court will not consider these issues before the discovery stage.

the corporation, are deemed incapable of conspiring among themselves or with the corporation.[8]
<u>Lopez v. Maczko</u>, No. CIV.A.07-1382, 2007 WL 2461709, at *5 (E.D. Pa. 2007) (citation omitted). The doctrine does not apply, however, "if the officer is acting in a personal, as opposed to official capacity" – in other words, "when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment." <u>Heffernan</u>, 189 F.3d at 412. Plaintiffs contend that their conspiracy claim is actionable because it is premised on the acts of the individual Defendants in their personal capacity. The Court agrees. Plaintiffs have sued only Defendants Green and King for personally conspiring to deprive Plaintiff Whaumbush of his civil rights in retaliation for Green's personal grievances with Whaumbush. Whether the individual Defendants were, in fact, motivated by personal racial animus is a factual issue not appropriate for resolution at the pleadings stage. <u>Rife v. Borough of Dauphin</u>, 625 F. Supp. 2d 212, 222 (M.D. Pa. 2008) (citing <u>Spector v. Bd. of Tr. of Cmty.-Technical Colls.</u>, 463 F. Supp. 2d 234, 251 (D. Conn. 2006) ("It would be premature for the court to conclude that the plaintiffs could prove no set of facts which tend to establish that some of the defendants were motivated by personal motives.")). Accordingly, the Court denies the Motion to Dismiss with respect to these Defendants in their individual capacities.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have set forth valid claims against Defendants Green and King in their individual capacities for tortious interference with prospective contractual relations (Count II), deprivation of Plaintiffs' First and Fourteenth

---

[8] The Third Circuit has extended the doctrine to alleged conspiracies involving governmental entities. <u>Heffernan v. Hunter</u>, 189 F.3d 405, 412 n.5 (3d Cir. 1999).

Amendment rights in violation of § 1983 (Count III), violation of Plaintiffs' rights to contract under § 1981 (Count IV), and conspiracy to violate Plaintiffs' civil rights under §1985 (Count V).  The Court dismisses the breach of contract action in its entirety, and all claims against Defendant the City of Philadelphia and Defendants Green, King, and Giorla in their official capacities.  Accordingly, the Defendants' Motion to Dismiss is granted in part and denied in part.