# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACQUE WHAUMBUSH, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | NO. 09-06066 |
| THE CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                April 12, 2011

Presently before the Court is the Motion of Plaintiffs Jacque Whambush and Detention Management Services, Inc. ("DMS") for Leave to File a Second Amended Complaint. For the following reasons, Plaintiffs' Motion is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jacque Whaumbush served as Chief Deputy Sheriff for the City of Philadelphia ("the City") under Sheriff John Green from 2005 to 2007. (Am. Compl. ¶ 13.) According to the facts set forth in the Amended Complaint, Whaumbush was wrongfully and constructively terminated from his position with the City in 2007. (Id. ¶ 14.) Soon after his termination, Whaumbush made an unsuccessful bid to run against Defendant Green in the 2007 Sheriff elections. (Id. ¶ 15.)

Around that time, the City of Philadelphia published a "Request for Contract Opportunity" for the outsourcing of housing, transportation, and other services for Philadelphia

County Prison inmates.  (Id. ¶ 16.)  In response to this request, Plaintiff DMS, a Pennsylvania corporation, drafted and submitted a contract proposal to the City of Philadelphia Prison System with the help of Plaintiff Whambush.  (Id. ¶¶ 16-18.)  Around August of 2007, the City published a Notice of Contract Award naming DMS as the recipient of the contract.  (Id. ¶ 19.)  Plaintiffs allege that the contract was worth more than $10 million in revenue to DMS.  (Id.)

Soon after the publication of this notice, Plaintiff Whaumbush attended a meeting with Defendant Leon King, Commissioner of the Philadelphia Prison System at that time.  (Id. ¶ 20.)  Plaintiffs aver that Defendant King worked closely with Defendant Green on transport and security issues for the Philadelphia Prison System.  (Id. ¶ 21, 23.)  As a result of his "close associat[ion]" with Defendant Green, Defendant King purportedly knew of Plaintiff Whaumbush's civil rights complaints against Green and his campaign to unseat him as Sheriff.  (Id. ¶¶ 21-22.)  Plaintiffs further allege that, around the time of this meeting, Defendants Green and King learned of Plaintiff Whaumbush's association with DMS.  (Id. ¶ 24.)  Soon after, the City of Philadelphia terminated DMS's contractual award with "no reasonable explanation."  (Id. ¶ 25.)  The City then awarded the contract to a vendor with a more expensive proposal, which the vendor was ultimately unable to implement.  (Id. ¶ 29.)

According to Plaintiffs, Defendants Green and King, upon learning of Whaumbush's association with the DMS contract, conspired to cause the termination of the award "to retaliate against Whaumbush and his allies" for Whambush's previous complaints and campaign against Sheriff Green.  (Id. ¶ 26.)  They aver that Defendants' acts were "intentional, malicious, negligent, reckless, and undertaken in complete disregard of the rights of Plaintiffs."  (Id. ¶ 31.)  Plaintiffs allege that the rescinding of the alleged contract caused them "substantial loss of

revenue and extreme financial damage." (Id. ¶ 26.)

Plaintiffs Whaumbush and DMS initiated this suit in the Philadelphia Court of Common Pleas on November 30, 2009. Defendants removed the action to federal court on December 21, 2009, and filed a Motion to Dismiss on December 30, 2009. Plaintiffs then filed a First Amended Complaint (hereinafter "Amended Complaint") on April 9, 2010. Defendants filed a second Motion to Dismiss on April 22, 2010, and Plaintiffs submitted a Response on May 24, 2010.

The Amended Complaint set forth the following claims against the City of Philadelphia and all Defendants in their official capacities, along with Defendants Green and King in their individual capacities: (1) breach of contract (id. ¶¶ 32-38); (2) tortious interference with contractual relationships and/or prospective advantage (id. ¶¶ 39-41); (3) deprivations of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983 (id. ¶¶ 42-46); (4) violation of Plaintiffs' rights under 42 U.S.C. § 1981 (id. ¶¶ 47-51); and (5) conspiracy to violate Plaintiffs' rights under 42 U.S.C. § 1985. (Id. ¶¶ 52-54.)

On October 15, 2010, this Court dismissed the breach of contract action in its entirety, along with all claims against the City of Philadelphia and Defendants Green, King, and Giorla in their official capacities. See Whambush v. City of Philadelphia, No. CIV.A.09-06066, 2010 WL 4054334 (E.D. Pa. Oct. 15, 2010). In dismissing Plaintiffs' § 1983 claim against the City pursuant to Rule 12(b)(6), the Court denied Plaintiffs' request for leave to amend on the basis of futility. On January 18, 2011, Plaintiffs moved for leave to file a Second Amended Complaint in an effort to resuscitate their claim for municipal liability under § 1983. Defendants filed a Response in Opposition on January 26, 2011. The Court now considers this Motion.

3

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) dictates that a court "should freely give" leave to amend "when justice so requires." FED. R. CIV. P. 15(a)(2); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). A court has discretion to deny such leave, however, on grounds of undue delay, bad faith, dilatory motive, prejudice, or futility. Id. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Id.; Holst v. Oxman, 290 Fed. Appx. 508, 510 (3d Cir. 2008). In determining the futility of a plaintiff's proposed amendments, "the district court should apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 39 F. Supp. 2d 458, 467 (D.N.J. 1999) (citing In re Burlington Coat Factory, 114 F.3d at 1434). Thus, the plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).

## III. DISCUSSION

Section 1983 imposes liability on a municipality only where the plaintiff identifies "a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). Policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish

4

municipal policy with respect to the action issues an official proclamation, policy or edict," or (2) through a "course of conduct . . . when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations and quotations omitted). These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997); Banegas v. Hampton, No. CIV.A.08-5348, 2009 WL 1098845, at *3 (E.D. Pa. Apr. 22, 2009).

In their previous Amended Complaint, Plaintiffs asserted that the retaliatory decision by Defendants Green and King to cause the termination of Plaintiffs' contract award constituted an "official policy or custom" of the City of Philadelphia because "it was undertaken pursuant to the directions of top level decisionmakers for the City of Philadelphia in their respective departments." (Am. Compl. ¶ 45.) The Court rejected this argument, finding that a single decision by a municipal official may constitute "policy" under Monell only if the official is the highest one responsible for establishing final policy with respect to the subject matter in question. Pembaur v. Cincinnatti, 475 U.S. 469, 481-82 (1986); Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003). Whether an official has such authority is ultimately a question of state law. Pembaur, 475 U.S. at 483; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988) (noting that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it").

In dismissing Plaintiffs' claim, the Court took judicial notice of Philadelphia's Home Rule Charter and City Code, which specifically name the Procurement Commissioner, Finance

5

Director, and City Solicitor as having final authority over the City's contract awards. Based on this explicit governmental directive, the Court found that no additional allegations or discovery would permit Plaintiffs to show that Defendant King, by law, had final, unreviewable discretion with respect to the creation or termination of municipal contracts. As such, the Court dismissed Plaintiffs' claim for municipal liability with prejudice on the basis of futility.

Despite this ruling, Plaintiffs have again moved to amend the Complaint in the hopes of adding factual allegations sufficient to satisfy Monell. Specifically, Plaintiffs seek to allege that the City's unspoken custom of providing the Commissioner of Prisons with "veto power over proposed contract vendors he or she opposes" caused Plaintiffs' harm.[1]

As noted above, a municipality may be held liable via knowing acquiescence in a long-standing, unwritten discriminatory practice or custom. Yet even construing the proposed allegations in the light most favorable to Plaintiffs, a custom of rubber-stamping the vendor preferences of the Prison Commissioner can hardly be described as discriminatory. "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality,

---

[1] Defendants correctly argue that the Court may deny leave to amend under these circumstances based on the law of the case doctrine. Pursuant to this doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Hoffecker, 530 F.3d 137, 165 (3d Cir. 2008) (quotations omitted). The doctrine does not preclude reconsideration of previously decided issues in "extraordinary circumstances," such as where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." In re City of Philadelphia Litig., 158 F.3d 711, 718 (3d Cir. 1998).
   The Court agrees with Defendants that Plaintiffs have presented no such extraordinary circumstances warranting a re-visiting of the Court's prior ruling. For the sake of clarity, however, the Court will briefly explain the futility of Plaintiffs' proposed allegations.

and the causal connection between the 'policy' and the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985). Here, Plaintiff has averred, without elaboration, that the City's policy of deference to the Prison Commissioner's vendor choices "caused" Plaintiffs' harm. Such a conclusory assertion is not sufficient to pass muster under Rule 12(b)(6).

Likewise, if Plaintiffs are attempting to suggest that such a custom has permitted Defendant King, as Prison Commissioner, to become a de facto "policymaker" for the City, their argument is both repetitive and misguided. As this Court explained in its previous opinion, the Supreme Court has explicitly stated that "simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." Praprotnik, 485 U.S. at 130. If anything, allegations that the City automatically deferred to Defendant King's vendor preferences suggest a *lack* of knowing acquiescence in the alleged discriminatory motive behind his decision. See id. at 127 (suggesting municipality may be liable for discriminatory decision of subordinate only "[i]f the authorized policymakers approve a subordinate's decision *and the basis for it*") (emphasis added). Plaintiffs have alleged neither a pattern of unlawful decisions on the part of Defendant King nor the City's knowing approval of Defendant King's retaliatory motive.

In sum, Plaintiffs' conclusory allegations do no more than re-word a theory of liability this Court has already dismissed. Even taking these proposed allegations as true, Plaintiffs have again failed to set forth facts sufficient to withstand the requirements of Rule 12(b)(6). Accordingly, the Court denies Plaintiffs' request to amend on the basis of futility.

7

## IV. CONCLUSION

Having considered Plaintiffs' proposed amendments, the Court finds the additional allegations insufficient to state a claim under Rule 12(b)(6). Accordingly, Plaintiffs' Motion for Leave File a Second Amended Complaint is denied.

An appropriate Order follows.